Lasser, Appellant, *v.* Philadelphia National Bank.

Argued January 10, 1936. Before KEPHART, C. J., SCHAFFER, MAXEY, DREW and BARNES, JJ.

*Joseph A. Keough,* with him *Levi, Mandel & Miller,* for appellant.

*S. B. Fortenbaugh, Jr.,* with him *Shields, Clark, Brown & McCown,* for appellee.

OPINION BY MR. JUSTICE MAXEY, March 23, 1936:

Plaintiff seeks, in this action of assumpsit, to recover the sum of $4,085, alleged to have been had and received by defendant to plaintiff's use. At the trial, the jury returned a verdict in favor of plaintiff, but the court below entered judgment for defendant n. o. v., whereupon plaintiff appealed.

The facts follow: Wright Metal, Inc., is a fabricator of metal office partitions; it now operates under an assignment for benefit of creditors. In 1930, this company (hereinafter referred to as Wright) entered into an agreement with David Lupton Sons & Company of Philadelphia (hereinafter referred to as Lupton), that the latter was to handle the Wright partitions under an arrangement whereby payment for the partitions was to be made to Wright only as Lupton was paid by its customers. Although Wright thus assumed the credit risk involved, each order, as filled by Wright, was entered on its books as a charge against Lupton, and Lupton rendered bills to its customers in its own name—these bills including its profit or "commission" on the sale and also the cost of labor and other materials furnished. In June, 1931, Lupton, finding itself in financial difficulty, negotiated with the defendant bank a series of loans, the arrangement being that as each loan was made, Lupton

would assign certain of its accounts receivable to the bank as security. When Lupton received payment from its debtors on these accounts, the payments were turned over to the bank and the proceeds deposited in a special account out of which the loans were liquidated. Among the accounts receivable so assigned were five representing, inter alia, sales of Wright partitions. Plaintiff's claim is made up of the net amounts due it in these five instances. The arrangement between the bank and Lupton continued until the latter's bankruptcy on March 30, 1932. In the liquidation of the Lupton business the bank has collected from the assigned accounts receivable, as of December, 1933 (the date originally set for trial), $85,000 in excess of the loans for which they were pledged. At that time, however, Lupton still owed the bank $143,000 for which no security had been given, and $77,000 advanced for expenses of liquidation. Prior to the bankruptcy, Wright had no dealings with the bank.

Appellant's principal contention is that the arrangement between it and Lupton was that of an undisclosed agency—that Lupton was acting simply as its agent selling on commission, but billing the buyers in its own name because of its larger organization and older, better-established reputation—and that therefore the portions of the assigned accounts representing sales of its partitions are its property. When the testimony is read in the light most favorable to plaintiff, as it must be on plaintiff's appeal from a judgment entered for defendant n. o. v., it may be conceded that plaintiff has successfully established the existence of the agency relationship, but the conclusion that is sought to be drawn therefrom—that the defendant bank received the assigned accounts subject to appellant's claim to a part of the proceeds—does not follow. Appellant concedes that defendant was a bona fide assignee of the accounts without notice of appellant's claim to a share therein, and for a present valuable consideration, and that appellant had conferred upon Lupton the indicia of ownership. These facts de-

termine the issue. It is an established principle both in law and in equity that an innocent purchaser for value of a claim from one who rightfully possesses the evidences of ownership thereof takes it free of any latent equities in third parties. This rule is embodied in section 174 of the *Restatement of Contracts:* "If an assignor's right against the obligor is voidable by some one other than the obligor or is held in trust for such a person, an assignee who purchases the assignment for value in good faith without notice of the right of such person cannot be deprived of the assigned right or its proceeds." An undisclosed agency relation existing between appellant and Lupton, the assignor, is of no avail to the former; the transfer by an agent to a bona fide purchaser who was unaware of the principal's existence defeats the principal's rights: *Restatement, Agency,* sections 301 and 307. This court has frequently applied this rule: *Mott v. Clark,* 9 Pa. 399; *Mifflin County Nat. Bank's App.,* 98 Pa. 150; *Collins's App.,* 107 Pa. 590; *O'Connor v. Clark,* 170 Pa. 318, 32 A. 1029; *Newman v. Globe Indemnity Co.,* 275 Pa. 374, 119 A. 488; *Maryland Casualty Co. v. Nat. Bank of Germantown & Trust Co.,* 320 Pa. 129, 182 A. 362.

Appellant also contends that even if defendant did obtain a right in the assigned accounts superior to appellant's own claim, it nevertheless has no right to retain the money received from the portion of these five accounts which represent sales of plaintiff's goods, since the loans for which the accounts were pledged have now been wholly paid off by the proceeds from other similarly assigned accounts. This contention is answered by our recent decision in *Maryland Casualty Co. v. Nat. Bank of Germantown & Trust Co.,* supra. In that case where a claim against a municipality had been assigned as security under circumstances such that the bank received the claim free of an equitable lien thereon in favor of the assignor's surety, we held that the bank might apply the proceeds of the claim, over and above the debt for which

it was pledged, to the discharge of *any other matured indebtedness due to the bank by the assignor,* even though before applying the money to such other indebtedness the bank had received notice of the surety's original equitable lien upon the assigned property. Likewise, in the instant case, the defendant had the right to apply this excess claimed by appellant to the payment of the latter's indebtedness to it.

The judgment is affirmed.